IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KLEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-8818 |
| | ) |
| WEXOFRD HEALTH SOURCES, INC., | ) |
| DR. SALEH OBAISI, DR. STEPHEN RITZ, | ) |
| and DR. KUL SOOD, | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

NOW COMES Plaintiff, DAVID KLEIN, by counsel, RISLEY LAW FIRM, and complains against Defendants, WEXFORD HEALTH SOURCES, INC., DR. SALEH OBAISI, DR. STEPHEN RITZ, and DR. KUL SOOD, in their official capacities as employees or agents of WEXFORD HEALTH SOURCES, INC., as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action against defendants seeking redress for the violation of rights secured by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983 for Failure to Provide Adequate Medical Care (Count I), for Negligence (Count II), and Respondeat Superior (Count III).

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is provided by 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because the majority of the events giving rise to the plaintiff's claim occurred at Stateville Correctional

1

Center and DR. SAHEL OBAISI works at Stateville Correctional Center and upon information and belief resides in this judicial district.

## PARTIES

4. Plaintiff, DAVID KLEIN, is currently an inmate confined to Hill Correctional Center in the City of Galesburg, County of Knox, and State of Illinois. His prisoner identification number is R43160. At all relevant times to this action, the plaintiff was confined to Hill Correctional Center and Stateville Correctional Center. Stateville Correctional Center is located in the City of Crest Hill, County of Will, and State of Illinois.

5. Defendant, WEXFORD HEALTH SOURCES, INC., is a Florida corporation with its principal office located in the City of Pittsburgh, County of Allegheny, and State of Pennsylvania. At all relevant times to this action, WEXFORD HEALTH SOURCES, INC. had primary responsibility for providing adequate medical care to inmates at both Stateville Correctional Center and Hill Correctional Center.

6. Defendant, DR. SAHEL OBAISI, is an employee of WEXFORD HEALTH SOURCES, INC., and medical director of Stateville Correctional Center. Defendant, DR. SAHEL OBAISI, was individually involved in: (i) implementing WEXFORD HEALTH SOURCES, INC.'s cost-cutting policies; and (ii) reviewing and denying plaintiff, DAVID KLEIN's surgical procedure to repair his tympanic membrane perforation.

7. Defendant, DR. STEPHEN RITZ, is an employee of WEXFORD HEALTH SOURCES, INC., and has the title of Corporate Medical Director, Utilization Management. He works at WEXFORD HEALTH SOURCES, INC.'s corporate office in Pittsburgh, Pennsylvania. DR. STEPHEN RITZ was personally involved in: (i) implementing WEXFORD HEALTH

SOURCES, INC.'s cost-cutting policies; and (ii) reviewing and denying plaintiff, DAVID KLEIN's surgical procedure to repair his tympanic membrane perforation.

8. Defendant, DR. KUL SOOD, is an employee of WEXFORD HEALTH SOURCES, INC., and medical director of Hill Correctional Center. Defendant, DR. KUL HOOD, was individually involved in: (i) implementing WEXFORD HEALTH SOURCES, INC.'s cost-cutting policies; and (ii) reviewing and denying plaintiff, DAVID KLEIN's surgical procedure to repair his tympanic membrane perforation.

## RELEVANT FACTUAL BACKGROUND

9. In July of 2010, while plaintiff, DAVID KLEIN, was incarcerated at Stateville Correctional Center, he began experiencing discharge from his left ear, itching of his left ear, and pain to his left ear. He was seen by the medical staff and provided eardrops and Motrin.

10. In June of 2011, the plaintiff, DAVID KLEIN's left ear again was painful and the left ear again discharged fluid. He was seen by the medical staff and was again provided eardrops and Motrin.

11. In September of 2012, the plaintiff was suffering from severe headaches, he was in extreme pain and was extremely sensitive to light. His right ear was providing him tremendous pain and his right ear began discharging fluid. The pain was so severe, the plaintiff was escorted to the Health Care Unit in a wheelchair and the plaintiff was diagnosed with Tympanic Membrane Perforation. DR. SAHEL OBAISI prescribed plaintiff Norco, Tylenol, and Doxcycline.

12. The plaintiff's perforated tympanic membrane did not improve, and in November of 2013, the plaintiff was again seen at the Health Care Unit with complaints of swelling in his

neck, drainage from his ear, and ear pain. DR. SAHEL OBAISI prescribed more Tylenol and eardrops.

13. Thereafter, the plaintiff was transferred to Hill Correctional Center. Upon arrival to Hill Correctional Center, then plaintiff notified the medical staff at Hill Correctional Center of the pain and discharge he was having from his perforated eardrum in his right ear. Further, he notified them of the impact that his perforated eardrum was having on his activities of daily living, including his inability to participate in strenuous activities and strenuous exercise as this exacerbated his ear pain and led to discharge.

14. On or about July 16, 2014, the plaintiff was seen by DR. KUL SOOD. Despite the plaintiff advising DR. KUL HOOD that the Bactrim (eardrops) and Tylenol did not help with the ear pain and discharge, DR. KUL HOOD prescribed Bactrim and Tylenol, which were the exact same medications.

15. Approximately one week later, on or about July 23, 2014, the plaintiff presented to the nurse sick call due to his continued ear pain in his right ear that had the perforated eardrum. At that time, the plaintiff showed the nurse a tissue that contained yellow drainage/discharge that had come from his right ear. Thereafter, the plaintiff was referred to and seen by DR. KUL HOOD. When the plaintiff presented to DR. KUL HOOD he was in extreme pain, and DR. KUL HOOD merely prescribed naproxyn, which neither alleviated the plaintiff's pain nor the discharge from his right ear.

16. Plaintiff continued with right ear pain and right ear discharge, and in October of 2014, the plaintiff was seen at the Health Care Unit by DR. KUL HOOD. It was at this visit that DR. KUL HOOD finally referred the plaintiff to an outside specialist, and more specifically, an Ear Nose and Throat specialist.

17. On or about November 18, 2014, the plaintiff was seen by an Ear Nose and Throat specialist, Dr. Klemens at Peoria E.N.T. Group and determined that plaintiff did have a right Tympanic Membrane 30% anterointrer perforation and purulent drainage from the middle ear space. Dr. Klemens recommended Ciprodex otic drops and a CT Scan of the temporal bone. The plaintiff was sent back to Hill Correctional Center.

18. On or about December 10, 2014, the plaintiff returned to see Dr. Klemens and a temporal bone CT Scan was performed. Dr. Klemens advised the plaintiff a surgical repair of the tympanic membrane perforation would benefit the plaintiff.

19. On or about December 17, 2014, upon information and belief, DR. KUL SOOD and DR. STEPHEN RITZ had a collegical review for the foregoing tympanic membrane repair, and "per DR. RITZ" the surgical procedure to cease plaintiff's hearing loss, stop the drainage and ear pain, was denied.

20. Since December 17, 2014, the plaintiff continued suffering from increased hearing loss in his right ear and his left ear, right and left ear pain, and right and left ear drainage, and despite these complaints, the only medical treatment provided to the plaintiff was Tylenol and Motrin, which did not help alleviate any of the foregoing symptoms.

21. On or about November 5, 2015, the plaintiff awoke with blood in his right ear and was seen by DR. KUL SOOD. DR. KUL SOOD advised the plaintiff there was no problem and sent the plaintiff back to his cell.

22. On or about August of 2016, a hearing test of the plaintiff revealed he was totally deaf in his right ear and was losing hearing in his left ear.

23. On or about August 15, 2016, the plaintiff suffered from two significant dizzy spells, and was diagnosed with seasonal allergies and provided with medications to treat the seasonal allergies.

24. WEXFORD HEALTH SOURCES, INC., in its capacity as a medical service provider to inmates at Illinois Department of Corrections facilities, has maintained a policy of denying proper medical treatment, such as the surgical repair of the tympanic membrane perforation, by holding a "collegical review." WEXFORD HEALTH SOURCES, INC. continually denies proper medical treatment until such time it becomes a life threatening situation, or that an injury or condition becomes so severe that WEXFORD HEALTH SOURCES, INC. can no longer prolong or deny proper medical treatment.

25. Under WEXFORD HEALTH SOURCES, INC.'s policy, the cost of surgical repair is more valuable than plaintiff's pain, suffering and physical impairment caused by not performing the surgery. In this instance, the decision to deny the proper surgery has caused the plaintiff to not only continue with significant ear pain, ear discharge, but also has caused plaintiff irreversible hearing loss, and upon information and belief, has the potential to have the perforation grow larger, increasing the risk and probability of future ear infections, diminishing the integrity of the temporal bone, which leads to meningitis and loss of balance.

26. WEXFORD HEALTH SOURCES, INC.'s policy that has been condoned and implemented by DR. SALEH OBAISI, DR. STEPHEN RITZ, and DR. KUL HOOD is in direct contradiction to common sense and has deprived the plaintiff of his constitutional right to receive proper medical care while under the controlled care of WEXFORD HEALTH SOURCES, INC., and is further in contradiction to accepted medical wisdom, in that: (i) the risk of Tympanoplasty is minimal; (ii) the risk of denying the Tympanoplasty is severe in that plaintiff's condition will

continue to deteriorate; (iii) the plaintiff has lost his hearing in his right ear and his left ear's hearing has diminished; and (iv) the delay of six years from the first complaints and the continued delay as symptoms worsened while knowing the plaintiff's condition would not improve on its own.

27. DR. KUL SOOD referred the plaintiff to Dr. Klemens because DR. KUL SOOD did not have the expertise to properly treat the plaintiff. Even after the more qualified Dr. Klemens recommended surgical intervention to repair the plaintiff's perforated eardrum, WEFORD HEALTH SOURCES, INC. through DR. STEPHEN RITZ denied the surgery, and this denial is outrageous behavior and indicative of the manner in which WEXFORD HEALTH SOURCES, INC. metes out is policy of favoring costs cutting over the more qualified medical judgment and contradicts basic human decency.

28. The plaintiff has exhausted all reasonable remedies to obtain proper medical care as it relates to his ear conditions. On January 14, 2015, the plaintiff filed his first grievance, Grievance No. 15-0093, with the Administrative Review Board. The Administrative Review Board denied the grievance nearly one year later on January 6, 2016. The plaintiff filed a second grievance marked emergency on March 21, 2015 and a third grievance marked emergency on October 28, 2015.

## COUNT I

### (FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

### 42 U.S.C. §1983, Fourteenth Amendment)

29. Plaintiff restates and re-alleges by reference paragraphs 1 through 28 as if fully set forth herein as against all defendants.

7

30. The plaintiff, DAVID KLEIN, had and still has a serious medical condition as it relates to his ear pain, ear drainage, perforated ear drum and hearing loss.

31. The defendants, WEXFORD HEALTH SOURCES, INC., DR. SALEH OBAISI, DR. STEPHEN RITZ, and DR. KUL HOOD, were deliberately indifferent to plaintiff's serious medical needs by not providing him with the treatment recommended by the more qualified specialist doctor, Dr. Klemens, the doctor that was selected by the defendants.

32. The actions of the defendants, as described above, whereby defendants were aware of but deliberately, willfully, and wantonly ignored the obvious serious medical needs of plaintiff and the substantial risk of serious injury and the progressively debilitating consequences for failing to provide adequate medical care to the plaintiff, constituted deliberate indifference to plaintiff's medical needs, in violation of the Fourteenth Amendment to the United States Constitution.

33. The defendants conduct, or this in this case, their deliberate inaction cased the plaintiff to suffer significant ear pain and complete hearing loss to his right ear and diminished hearing in his left ear.

34. The Constitutional violations detailed above were caused in part by the customs, policies, and practices WEXFORD HEALTH SOURCES, INC., as promulgated, enforced, and disseminated by DR. SALEH OBAISI, DR. STEPHEN RITZ, and DR. KUL SOOD, whereby the foregoing defendants collectively charged with ensuring adequate health care to inmates confined to the Illinois Department of Correction facilities and utterly failed to provide access to the most basic health care commensurate with a civilized society, in this case and in many other cases.

35. These failures include:

(a) fostering an atmosphere at Stateville Correctional Center and Hill Correctional Center where medical personnel were encouraged to disregard serious medical needs of detainees; and

(b) knowingly failing to ensure that serious emergent medical needs of inmates could be treated in a reasonable time frame; and

(c) failing to have adequate assessment of inmates and incoming inmates' health condition by qualified physicians; and

(d) encouraging the destruction of documents and/or falsely minimizing medical reports to cover up inadequacies in the medical care of inmates, thus maintaining an atmosphere and climate where inmates' serious medical needs are ignored and Constitutional violations are not prosecuted or punished.

36. The conduct of the defendants was and became the custom and practice of WEXFORD HEALTH SOURCES, INC., DR. SALEH OBAISI, DR. STEPHEN RITZ, and DR. KUL HOOD.

37. By defendants' actions, plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the United States Constitution and by the denial of adequate medical care.

38. As a direct and proximate result of these Constitutional violations, plaintiff was caused to suffer great pain, mental anguish, and further permanent injury.

WHEREFORE, plaintiff seeks the following relief as to Count I of the Complaint against defendants, jointly and severally:

  A. Compensatory damages in an amount greater than $100,000 to be proven at Trial;

  B. Punitive damages as allowed by law as against the individual defendants;

  C. An award of reasonable attorneys' fees, costs, and litigation expenses;

  D. Ordering the defendants to send plaintiff to a reputable outside Ear Nose and Throat doctor and ordering defendants to follow all recommendations of said doctor; and

  E. Such other relief as the Court may deem just and equitable.

## COUNT II

### (NEGLIGENCE

### Under Illinois Law)

39. Plaintiff restates and re-alleges by reference paragraphs 1 through 28 as if fully set forth herein as against all defendants.

40. Defendants had a duty, arising from their relationship as the sole caretaker of plaintiff, to exercise reasonable care for plaintiff and to provide adequate and proper medical treatment.

41. Defendants failed to conform to the required standard of care.

42. Defendants' failure to meet that standard of care proximately caused plaintiff's injury.

43. The failure of defendants to provide adequate medical care for plaintiff constituted complete, deliberate, and willful and wanton indifference to plaintiff's serious medical needs.

WHEREFORE, plaintiff seeks the following relief as to Count I of the Complaint against defendants, jointly and severally:

    A.    Compensatory damages in an amount greater than $100,000 to be proven at Trial;

    B.    Punitive damages as allowed by law as against the individual defendants;

    C.    An award of reasonable attorneys' fees, costs, and litigation expenses;

    D.    Ordering the defendants to send plaintiff to a reputable outside Ear Nose and Throat doctor and ordering defendants to follow all recommendations of said doctor; and

    E.    Such other relief as the Court may deem just and equitable.

## COUNT III

### (RESPONDEAT SUPERIOR v. WEXFORD HEALTH SOURCES, INC.)

44. Plaintiff restates and re-alleges by reference paragraphs 1 through 28 as if fully set forth herein.

45. In committing the acts alleged herein, *supra*, the individual defendants were employees of WEXFORD HEALTH SOURCES, INC., acting at all relevant times within the scope of their employment.

46. The individual defendants' conduct described herein, *supra*, was willful and wanton. Defendant, WEXFORD HEALTH SOURCES, INC., is liable as principal for all torts committed by its employees and agents.

WHEREFORE, plaintiff respectfully request:

A. Compensatory damages in an amount greater than $100,000 to be proven at Trial;

B. An award of reasonable attorneys' fees, costs, and litigation expenses;

C. Ordering the defendants to send plaintiff to a reputable outside Ear Nose and Throat doctor and ordering defendants to follow all recommendations of said doctor; and

D. Such other relief as the Court may deem just and equitable.

> Respectfully submitted,
> **RISLEY LAW FIRM**
>
> */s/ Phillip L. Risley*
> Plaintiff's Attorney

Phillip L. Risley
**Risley Law Firm**
203 N. LaSalle Street
Suite 2100
Chicago, IL 60601
(312) 501-1600
ARDC No. 6272936
philrisley@gmail.com