UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID KLEIN,                                )
                                            )
                          Plaintiff,        )    16 C 8818
                                            )
             vs.                            )    Judge Gary Feinerman
                                            )
WEXFORD HEALTH SOURCES, INC., SALEH         )
OBAISI, STEPHEN RITZ, and KUL SOOD,         )
                                            )
                          Defendants.       )

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this suit under 42 U.S.C. § 1983, David Klein alleges that Wexford Health Sources,

Inc. and Wexford doctors Saleh Obaisi, Stephen Ritz, and Kul Sood violated the Eighth

Amendment in connection with the medical care he received in prison. Doc. 9. The court

recruited counsel for Klein, Doc. 4 (Shadur, J.), and then dismissed certain of his claims, Doc. 24

(Shadur, J.); Doc. 44. Trial is set for August 12, 2019. Doc. 95. Wexford, Ritz, and Sood move

for summary judgment on all remaining claims. Doc. 74. The motion is granted as to Wexford

and Ritz and denied as to Sood. Klein's claims against Obaisi, who died in December 2017,

Doc. 57-1, are dismissed under Civil Rule 25(a)(1).

**Background**

**A.     Klein's Noncompliance with Local Rule 56.1(b)(3)**

Consistent with Local Rule 56.1, Defendants filed a Local Rule 56.1(a)(3) statement of

undisputed facts along with their summary judgment motion. Doc. 76. The factual assertions in

the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are generally

supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall

consist of short numbered paragraphs, including within each paragraph specific references to the

affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.").  If Klein wished to oppose summary judgment, Local Rule 56.1 required him to file:

> (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to [Defendants' Local Rule 56.1(a)(3)] statement that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b).

Rather than filing a separate Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement of additional facts, Klein included in his Local Rule 56.1(b)(2) memorandum of law forty-one paragraphs of factual assertions.  Doc. 85 at ¶¶ 6-46.  Because those forty-one paragraphs do not reference or correspond with Defendants' Local Rule 56.1(a)(3) statement, they do not satisfy Local Rule 56.1(b)(3)(B)—which, as just noted, required Klein to file a "concise … response to each numbered paragraph in [Defendants'] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon."  N.D. Ill. L.R. 56.1(b)(3)(B).  The court need not and will not attempt to map Klein's forty-one paragraphs of factual assertions onto the factual assertions in Defendants' Local Rule 56.1(a)(3) statement to determine whether he has adduced a genuine dispute of material fact as to Defendants' assertions; that is the function of a properly constructed Local Rule 56.1(b)(3)(B) response.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of [Local] Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central

to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function that local rules like [Local] Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules. … [Local] Rule [56.1(b)(3)(B)] required [the non-movant] to admit or deny each factual statement proffered by [the movant].") (internal quotation marks omitted); *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005) ("We are hard-pressed to see how [the] affidavit could constitute compliance with [Local] Rule 56.1. … [The] affidavit in no way constitutes a concise response to each numbered paragraph in the [Local Rule 56.1(a)(3)] statement.") (alteration and internal quotation marks omitted); *Mortera v. Target Corp.*, 2018 WL 3753301, at *1-2 (N.D. Ill. Aug. 8, 2018) (citing cases); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787, at *1-2 (N.D. Ill. Feb. 29, 2016) (citing cases), *aff'd*, 672 F. App'x 607 (7th Cir. 2017). Accordingly, the factual assertions in Klein's memorandum of law do not qualify as a Local Rule 56.1(b)(3)(B) response and thus do not controvert Defendants' Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the [Local Rule 56.1(b)(3)(B)] statement of the opposing party.").

Defendants contend that the court should not consider Klein's factual assertions to constitute a Local Rule 56.1(b)(3)(C) statement because they do not "consis[t] of short numbered paragraphs[] of any additional facts that require the denial of summary judgment, including

references to the affidavits, parts of the record, and other supporting materials relied upon." Doc. 89 at 2 (quoting N.D. Ill. L.R. 56.1(b)(3)(C)). Although some of Klein's forty-one paragraphs are not "short" and do not "referenc[e]" the summary judgment record, *ibid.*, the court will deem those paragraphs to be a Local Rule 56.1(b)(3)(C) statement and address Defendants' objections on a paragraph-by-paragraph basis. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (affirming the district court's discretion, when confronted with a largely noncompliant Local Rule 56.1(b)(3)(B) response, to deem admitted "[42] of the [47] enumerated paragraphs in Defendants' [Local Rule 56.1(a)(3)] statement" rather than to categorically disregard the Local Rule 56.1(b)(3)(B) response). That said, "[b]ecause the only proper vehicle for disputing factual assertions in [the movant's] Local Rule 56.1(a)(3) statement is a Local Rule 56.1(b)(3)(B) response," the assertions in Klein's Local Rule 56.1(b)(3)(C) statement will be "disregard[ed] … to the extent those assertions conflict" with the assertions in Defendants' Local Rule 56.1(a)(3) statement, which are deemed admitted due to Klein's failure to file a Local Rule 56.1(b)(3)(B) response. *Rodriguez v. City of Berwyn*, 2018 WL 5994984, at *1 (N.D. Ill. Nov. 15, 2018); *see also Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (affirming the district court's "refus[al] to consider [the] [Local Rule 56.1(b)(3)(B)] response" where the non-movant "did not separate his proposed facts from his responses to [the movant's] proposed material facts") (internal quotation marks omitted); *Olivet Baptist Church*, 2016 WL 772787, at *1-2 (deeming admitted the facts asserted in the defendant's Local Rule 56.1(a)(3) statement where the plaintiff did not file a Local Rule 56.1(b)(3)(B) response and instead attempted to treat its Local Rule 56.1(b)(3)(C) statement as a response to the Local Rule 56.1(a)(3) statement).

As Defendants correctly observe, ¶¶ 6-7 of Klein's Local Rule 56.1(b)(3)(C) statement do not cite record evidence to support their factual assertions, and the record evidence that ¶ 8 cites does not support that paragraph's factual assertions.  Doc. 89 at pp. 3-4, ¶¶ 6-8.  The court therefore disregards ¶¶ 6-8 of Klein's Local Rule 56.1(b)(3)(C) statement.  *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[The non-movant] failed to cite or submit evidence in support of nearly all of the additional facts he asserted. … Accordingly, the district court did not abuse its discretion in disregarding the facts contained in [the non-movant's] statement of additional facts that were not supported by proper citations to the record."); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) ("The district court was entitled to disregard those assertions in [the non-movant's] proposed statement of facts that violated Local Rule 56.1 by not being properly supported … .").  Additionally, although Klein appended to his summary judgment response eight sworn statements from other inmates, Doc. 85-1, he references those materials only in his legal argument and not in his Local Rule 56.1(b)(3)(C) statement, and even in his legal argument fails to specify any particular witness or averment, Doc. 85 at ¶ 50.  By not "identifying the [particular witness] or the specific page number(s) on which the asserted fact can be found," and by not presenting the inmate statements via his Local Rule 56.1(b)(3)(C) statement, Klein failed to deploy them in compliance with Local Rule 56.1(b)(3)(C), and so the court disregards them.  *Friend*, 789 F.3d at 710-11; *see also Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015) ("This court has repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions, including by disregarding evidentiary documents because a required statement of facts was not filed. … District courts are not obliged to scour the record looking for factual disputes.") (citations omitted); *Koszola v. Bd. of Educ. of*

*Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[T]he district court did not abuse its discretion in limiting its review to the content of the parties' Local Rule 56.1 statements, excluding from consideration [the non-movant's] attached affidavits."), *overruled in other part by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016).

Defendants also argue that the court should disregard the sections of Klein's Local Rule 56.1(b)(3)(C) statement that rely on Klein's deposition testimony, Sood's deposition testimony, Ritz's deposition testimony, and Dr. James Klemens's testimony and records. Doc. 89 at 2. By failing to specify which paragraphs of Klein's statement are noncompliant with Local Rule 56.1(b)(3)(C) and why, Defendants have forfeited their objection. *See Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017) (considering objections that were "wholly unsupported by developed argument citing the record and supporting authority" to be "forfeited").

The court will not excuse Klein's noncompliance with Local Rule 56.1(b)(3). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint*, 791 F.3d at 767 (collecting cases); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (same); *Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (same, collecting cases); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Accordingly, because Klein failed to respond under Local Rule 56.1(b)(3)(B) to Defendants' Local Rule 56.1(a)(3) statement, the court deems admitted the Local Rule 56.1(a)(3) statement's factual assertions "to the extent the facts [a]re supported by admissible and docketed evidence." *Kreg*

*Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, [the non-movant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed.") (internal quotation marks omitted); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [non-movant] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (quoting *Cracco*, 559 F.3d at 632); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar).

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant[s]. [The movants] must still demonstrate that [they are] entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal quotation marks omitted). Accordingly, the court will recite the facts as favorably to Klein as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

## B.     Material Facts

Klein was imprisoned at Stateville Correctional Center from 2005 until May 21, 2014, when he was transferred to Hill Correctional Center. Doc. 76 at ¶ 1; Doc. 76-3 at 7. Wexford

contracts with the Illinois Department of Corrections ("IDOC") to provide medical services at Stateville and Hill.  Doc. 76 at ¶ 2.

In 1985, when he was about five years old, Klein underwent a myringotomy, a surgical procedure to relieve pressure on the eardrum.  *Id*. at ¶ 10; Doc. 76-3 at 9; Doc. 76-5 at 5.  At various points between June 2011 and January 2012, Klein sought medical attention at Stateville and received pain, antihistamine, and antibiotic medications for various ear issues—specifically, clogged ears, itching in his left ear, popping in both ears, ear pain, and hearing loss.  Doc. 76 at ¶¶ 20-23.  On September 10, 2012, Klein was taken by wheelchair to visit Obaisi, Stateville's medical director, for equilibrium and balance issues.  *Id*. at ¶¶ 6, 24-25; Doc. 89 at p. 4, ¶ 9; Doc. 76-3 at 16.  A physician assistant noted that Klein had a perforated right eardrum, and Obaisi diagnosed him with a chronic right ear infection and prescribed antibiotic and analgesic medications.  Doc. 76 at ¶¶ 24-25; Doc. 76-3 at 15.  At a follow-up appointment two days later, Obaisi observed that Klein's perforation and infection had improved.  Doc. 76 at ¶ 26.  In January 2013, Obaisi concluded that Klein's ear infection had resolved.  *Id*. at ¶ 30.

In November 2013 and February 2014, Klein had several medical appointments for hearing loss and left ear pain.  *Id*. at ¶¶ 31-33, 35.  On April 24, 2014, Klein saw Obaisi for infections in both ears.  *Id*. at ¶ 36; Doc. 76-3 at 18.  Obaisi observed a small hole in Klein's right eardrum, ordered an x-ray of his facial sinuses, and prescribed an antibiotic and antihistamine.  Doc. 76 at ¶ 36.  At a May 13, 2014 follow-up appointment—Klein's final visit with Obaisi—Obaisi did not observe drainage from Klein's right ear but noted that he reported reduced hearing in his right ear.  *Id*. at ¶ 37.

On July 16, 2014, some two months after his transfer to Hill, Klein reported right ear pain and a history of right ear perforation to Sood, Hill's medical director, who prescribed eardrops

and told him to keep his ear dry. *Id*. at ¶¶ 16, 38, 40; Doc. 89 at p. 12, ¶ 18. After he complained about right ear pain and a nurse observed yellow drainage from his right ear, Klein again saw Sood on July 30, 2014. Doc. 76 at ¶¶ 41-42. Sood diagnosed him with a chronic right ear infection with a perforation and prescribed pain medication (naproxen). *Id*. at ¶ 42. When Klein reported right ear drainage and hearing loss in October 2014, Sood diagnosed him with a chronic ear infection with right ear drainage and prescribed eardrops and migraine medicine. *Id*. at ¶¶ 43-44. At a follow-up appointment on November 4, 2014, Sood observed that Klein had 60% hearing in his right ear and, while noting that Klein had 100% hearing in his left ear, diagnosed him with a left ear infection. *Id*. at ¶ 45.

On November 6, 2014, Sood met with Ritz, Wexford's Corporate Medical Director for Utilization Management, to discuss Klein's right ear issues. Doc. 76 at ¶¶ 12, 46. Consistent with Wexford policy, Ritz met with onsite medical directors like Sood for a "collegial review" before approving offsite medical services. *Id*. at ¶ 13; Doc. 89 at p. 17, ¶ 33. Once the onsite medical director initiates the collegial review, the clinicians discuss the basis for the diagnosis in question, the medical necessity of offsite services, and the possibility of alternative treatments. Doc. 76 at ¶ 13; Doc. 89 at pp. 15, 17, ¶¶ 25, 33-34. Following the collegial review, Klein was approved to see Dr. James Klemens, a non-Wexford physician certified by the American Board of Otolaryngology. Doc. 76 at ¶¶ 46-47.

On November 18, 2014, Klemens examined Klein, who reported right ear pain, drainage, blockage, and hearing loss. *Id*. at ¶ 48; Doc. 76-8 at 5. Klemens concluded that Klein's childhood myringotomy increased his risk for tympanic membrane perforations, so he recommended eardrops, a temporal bone CT scan, and a follow-up appointment. Doc. 76 at ¶¶ 48, 50.

At the December 10, 2014 follow-up appointment, Klein told Klemens that his hearing had improved and that the eardrops had resolved his ear pain and drainage, but that he was hearing a tone in his right ear. *Id*. at ¶ 51; Doc. 89 at p. 11, ¶ 16. Although Klemens noted that he did not need to raise his voice to talk with Klein, he performed an audiogram that revealed "mild to moderate" hearing loss in Klein's right ear and symptoms consistent with a right eardrum perforation. Doc. 76 at ¶¶ 49, 51; Doc. 89 at p. 10, ¶ 14. Klemens opined that Klein's perforated eardrum likely caused the hearing loss in his right ear. Doc. 89 at p. 10, ¶ 14. Klemens concluded from the temporal bone CT scan that Klein's mastoid looked "very healthy," which led him to "offe[r]" rather than "recommen[d]" a tympanoplasty to repair Klein's perforated right eardrum. Doc. 76 at ¶¶ 51-52 (quoting Doc. 76-5 at 14). Put another way, Klemens considered a right tympanoplasty to be "elective." *Id*. at ¶ 52 (quoting Doc. 76-5 at 14); Doc. 89 at p. 11, ¶ 14. Klemens testified that if a similar patient declined a right tympanoplasty, he would continue to monitor the patient's symptoms through annual checkups. Doc. 89 at p. 11, ¶ 14; Doc. 76-5 at 12. Klemens also testified that the tympanoplasty would "likely" improve Klein's hearing and that hearing loss "over a very long period of time" could cause permanent nerve damage. Doc. 89 at p. 10, ¶ 14; Doc. 76-5 at 10-11. Klemens indicated that the tympanoplasty could prevent ear infections caused by bacteria entering through the perforated eardrum, but did not opine whether that was the cause of Klein's ear infections. Doc. 89 at p. 10, ¶ 14; Doc. 76-5 at 10.

Sood and Ritz held a collegial review in December 2014 to discuss Klemens's offer to perform a right tympanoplasty. Doc. 76 at ¶ 54. Were the surgery approved, Wexford would have paid for it. Doc. 89 at p. 13, ¶ 21. Sood and Ritz considered the right tympanoplasty to be "elective" based on the CT scan and audiogram results reported by Klemens and also because

(according to Sood and Ritz) prisoners do not need full bilateral hearing to live in prison. Doc. 76 at ¶¶ 15, 52, 54; Doc. 89 at pp. 13, 21, ¶¶ 20, 44-45. As a result, Sood and Ritz did not approve the procedure, but Ritz's note instructed Hill medical staff to "monitor" Klein's ear issues and "re[-]present" his case for collegial review "as needed." Doc. 89 at p. 21, ¶ 44 (quoting Doc. 76-4 at 34). The non-approval did not prevent Sood or another Wexford medical director from reinitiating a collegial review regarding the right tympanoplasty. Doc. 76 at ¶ 15. Sood declined to appeal the non-approval on Klein's behalf. Doc. 89 at p. 16, ¶ 28.

Between February 28, 2015 and June 24, 2016, Klein had some ten appointments—at least eight of which were with Sood—for right ear pain, hearing loss, and drainage issues. *Id.* at p. 7, ¶ 10; Doc. 76 at ¶¶ 55-65. On October 27, 2015, Klein told Sood that he had 80% hearing and buzzing in his right ear as well as right ear pain, so Sood prescribed eardrops and told him to keep his ear dry. Doc. 89 at p. 14, ¶ 23; Doc. 76 at ¶ 57. On November 5, 2015, Klein told Sood that he had seen blood in drainage from his right ear; Sood noted that Klein's right eardrum was perforated, provided him with earplugs, and told him to keep his ears dry. Doc. 76 at ¶ 58; Doc. 89 at p. 14, ¶ 24; Doc. 76-6 at 16. On December 3, 2015, Sood examined Klein and found no drainage from his right ear. Doc. 89 at p. 15, ¶ 24. Sood made the same finding at a December 24, 2015 appointment at which Klein also reported right ear pain, so Sood prescribed pain medication (Motrin) and an antibiotic (Bactrim). *Ibid.*; Doc. 76 at ¶ 61. On January 21, 2016, Klein told Sood that he had lost all hearing in his right ear since the time in early November when he saw blood in drainage from that ear. Doc. 89 at p. 14, ¶ 24; Doc. 76-6 at 17. But because Klein still could hear from his left ear, Sood declined to order further testing for the right ear, though he prescribed a different pain medication (naproxen). Doc. 89 at p. 16, ¶ 26; Doc. 76 at ¶ 62. Sood testified that he expected Klein to regain hearing when the blood in his right ear

dried, although he had not noted blood or drainage in Klein's right ear since November 5, 2015. Doc. 89 at p. 14, ¶¶ 24-25; Doc. 76 at ¶¶ 59, 61-62; Doc. 76-7 at 17.

In July 2016, Dr. Catalino Bautista replaced Sood as Hill's medical director. Doc. 76 at ¶ 16; Doc. 89 at p. 7, ¶ 10. When first examining Klein on July 5, 2016, Bautista reviewed his medical records and requested a collegial review for an audiology test, which Wexford approved. Doc. 76 at ¶¶ 66-67. On August 16, 2016, the audiology test showed total hearing loss in Klein's right ear and partial hearing loss in his left ear. Doc. 89 at p. 8, ¶ 10; Doc. 76-3 at 23; Doc. 76-7 at 283. Klein had several more appointments in August and September 2016 related to an ear infection and earache. Doc. 76 at ¶¶ 68-69, 71. The medical records from a September 20, 2016 appointment note that Klein could communicate without difficulty. *Id*. at ¶ 71.

Bautista saw Klein on October 6, 2016 to evaluate his perforated right eardrum and right ear pain. *Id*. at ¶ 72; Doc. 89 at p. 8, ¶ 10. In addition to continuing Klein's prescriptions, Bautista authorized Klein to receive a lower bunk and headphones that would cover his ears. Doc. 76 at ¶ 72. Klein had two follow-up appointments about his right ear in November 2016. *Id*. at ¶¶ 73-74; Doc. 89 at p. 8, ¶ 10. Klein's ear issues stabilized by 2017, though he had appointments in July 2017 related to head pain and balance issues and in January 2018 related to ear pain. Doc. 76 at ¶ 76; Doc. 89 at p. 8, ¶ 11; Doc. 76-3 at 24-25.

Before concluding, the court notes that Defendants deny certain assertions in Klein's Local Rule 56.1(b)(3)(C) statement regarding certain of his health complaints because the medical records do not reflect the complaints that he recalled at his deposition. Doc. 89 at pp. 4-5, 8, ¶¶ 9-10. The court disregards those denials because any conflicts between the health complaints that Klein recalled at his deposition and the complaints reflected in the medical records create a factual dispute that must be resolved in his favor at summary judgment. *See*

*Johnson*, 892 F.3d at 893 ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (internal quotation marks omitted).

### Discussion

Klein alleges that Drs. Obaisi, Ritz, and Sood were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Doc. 9 at ¶¶ 29-38. Klein also brings a *Monell* claim against Wexford based on its alleged policy and custom of prioritizing cost-cutting over inmates' medical needs. *Id*. at ¶¶ 24-27, 34-38. Defendants contend that Klein has not adduced sufficient evidence for a reasonable jury to find that Ritz and Sood acted with deliberate indifference or that Wexford had a policy or custom that caused his injuries. Doc. 75 at 4-14. In the alternative, Defendants seek to strike Klein's request for punitive damages. *Id*. at 13.

Obaisi does not seek summary judgment because, as reflected in the Rule 25(a)(3) statement noting death that Defendants served on March 5, 2018, Obaisi died in December 2017. Doc. 57 at 3; Doc. 57-1; Doc. 57-2 at ¶ 2; *see* Fed. R. Civ. P. 25(a)(3) ("A statement noting death must be served [on the parties as provided in Rule 5 and on nonparties as provided in Rule 4].");  *Atkins v. City of Chicago*, 547 F.3d 869, 870-71 (7th Cir. 2008) (same). Rule 25(a)(1) in pertinent part provides: "If the motion [to substitute a proper party for the decedent] is not made within 90 days after service of a statement noting the death, the action … against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1); *see* 7C Wright & Miller, *Federal Practice & Procedure* § 1955 (3d ed. 2019) ("A motion for substitution must be made not later than 90 days after service of a statement noting the death. If there is no motion for substitution made within the 90-day period, Rule 25(a)(1) provides that the action must be dismissed.") (internal quotation marks omitted). The 90-day period to move to substitute a proper party for Obaisi expired in

June 2018, and Klein to date has filed no such motion. Accordingly, the claims against Obaisi are dismissed under Rule 25(a)(1). *See Atkins*, 547 F.3d at 870 ("[T]he suit must be dismissed if the [Rule 25(a)(1)] motion for substitution is filed more than 90 days after the death is suggested upon the record by service of a statement of the fact of death.") (internal quotation marks omitted); *Russell v. City of Milwaukee*, 338 F.3d 662, 668 (7th Cir. 2003) (holding that "the district court did not abuse its discretion under Rule 6 by enforcing the [90-day] deadline" under Rule 25(a)(1) where the plaintiff did "not ma[k]e any showing or argument of excusable neglect").

## I.  Deliberate Indifference Claims Against Ritz and Sood

Where "prison medical staff exhibit deliberate indifference to an inmate's serious medical condition, they subject h[im] to unnecessary and wanton pain and suffering and thereby run afoul of the Eight Amendment." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). "To establish an Eighth Amendment claim for deliberate indifference to serious medical needs, … [t]he plaintiff must prove that he suffered from (1) an objectively serious medical condition to which (2) [the defendants were] deliberately, that is subjectively, indifferent." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (internal quotation marks omitted). The court "look[s] at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Implicitly conceding that Klein's ear issues presented a serious medical need, Ritz and Sood argue only that they were not deliberately indifferent to that need. Doc. 75 at 4-11.

"To establish deliberate indifference, a plaintiff must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell*, 895 F.3d at 498 (quoting *Petties*, 836 F.3d at 728); *see also Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("A failure to act in

the face of an obvious risk of which the official *should* have known is insufficient to make out a claim."). Whether a defendant acts with deliberate indifference "is measured subjectively: The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Ibid.* (quoting *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016)).

Because a defendant "must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights" to be held liable under § 1983, the court must separately assess Ritz's and Sood's conduct. *Mitchell*, 895 F.3d at 498; *see also Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) ("[Under § 1983,] the inmate must show that the defendant was personally responsible for th[e constitutional] violation. … While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he … must nonetheless have known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what [he] might see.") (alterations and internal quotation marks omitted). As Hill's medical director and Klein's treating physician for some two years, Sood examined Klein at medical visits from July 2014 to April 2016. Doc. 76 at ¶¶ 42, 44-45, 57-59, 61-64. By contrast, Ritz—who, as noted, served as Wexford's Corporate Medical Director for Utilization Management—never examined Klein and considered his case only at three collegial review meetings in November and December 2014. *Id.* at ¶¶ 12, 46, 50, 54. This significant difference between Sood's and Ritz's involvement in Klein's care, and therefore their awareness of his

deteriorating ear issues after December 2014, is critical to whether the record would allow a reasonable jury to find that they exhibited deliberate indifference.

In December 2014, when reviewing Klemens's offer to perform a right tympanoplasty, Ritz and Sood considered the surgery to be "elective" because Klein had no mastoid issues and still had 60% hearing in his right ear and 100% hearing in his left ear. *Id*. at ¶ 54; Doc. 89 at pp. 13, 21, ¶¶ 20, 44-45. Klemens testified that he offered rather than recommended surgery given the relative non-severity of Klein's symptoms and that he would continue to monitor a patient with similar hearing and ear issues. Doc. 76 at ¶¶ 52-53; Doc. 89 at p. 11, ¶ 14; Doc. 76-5 at 14. Given the choice that Klemens presented between elective surgery and continued monitoring, Sood and Ritz did not "refus[e] to take instructions from a specialist" by declining to approve surgery; rather, their choice of continued monitoring fell within "the permissible bounds of competent medical judgment" set by Klemens. *Petties*, 836 F.3d at 729; *see Rasho*, 856 F.3d at 476 ("A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.") (internal quotation marks omitted); *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (holding that the plaintiff "did not submit evidence from which a jury reasonably could find that [the doctor's] exercise of medical judgment departed significantly from accepted professional norms" where the doctor's "decision to forego a[ medical service] was implicitly endorsed by every other doctor who examined" the plaintiff). That Klein desired surgery is legally immaterial, as "the Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another."

*Cesal*, 851 F.3d at 721; *see also Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("[T]here is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field.") (internal quotation marks omitted); *Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

Klein responds that Ritz's and Sood's refusal to approve elective surgery in December 2014 constitutes deliberate indifference because they (unlike Klemens) had ready access to all his Wexford medical records, which reflected years of documented ear problems. Doc. 85 at ¶ 49. But the summary judgment record shows that Klemens also was aware of Klein's history of ear problems, Doc. 76 at ¶ 48; Doc. 76-8 at 5, and that as of December 2014, Klein had not experienced symptoms that were persistently more severe than those that Klemens observed: a perforated right eardrum, mild to moderate hearing loss in his right ear, and infection, blockage, and drainage that resolved with eardrops, Doc. 76 at ¶¶ 48, 51; Doc. 89 at pp. 9-11, ¶¶ 14-16. Additionally, the fact that Ritz and Sood at that juncture considered "administrative convenience and cost"—whether mild to moderate hearing loss in one ear would so affect Klein's life in prison as to justify surgery, Doc. 89 at p. 13, 22, ¶¶ 20, 45—along with his medical needs does not reflect deliberate indifference. *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) ("[A]dministrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in making treatment decisions … .") (emphasis deleted); *see also Petties*, 836 F.3d at 730 ("[T]he cost of treatment is a factor in determining what constitutes adequate, minimum-level care … ."); *Johnson v. Doughty*, 433 F.3d 1001, 1015

(7th Cir. 2006) ("[C]osts are generally a factor in determining surgical necessity [in prison medical care] … , but that fact is neither inappropriate nor surprising.").

After Ritz and Sood declined to order a right tympanoplasty in December 2014, Klein reported increasingly severe symptoms to Sood: buzzing and pain in his right ear on October 27, 2015; blood in drainage from his right ear in early November 2015; and continued right ear pain on December 24, 2015.  Doc. 89 at pp. 14-15, ¶ 24; Doc. 76-6 at 16.  Klein also reported right ear pain on January 21, 2016, when he informed Sood that he had been unable to hear from his right ear since early November 2015.  Doc. 89 at p. 15, ¶ 24; Doc. 76-6 at 17.

Given Klein's prolonged hearing loss, a reasonable jury could find that Sood's decision in January 2016 to continue an "easier and less efficacious treatment"—prescribing pain medication—without diagnosing the hearing loss or considering treatment beyond pain relief "constitute[d] deliberate indifference."  *Cesal*, 851 F.3d at 722 (internal quotation marks omitted); *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("The summary judgment record indicates that [the plaintiff] was given pain medication, but he was reasonably seeking [medical intervention] to treat, not simply mask, his condition."); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment.") (internal quotation marks omitted).  Having participated in the collegial review, Sood was familiar with the symptoms that made a right tympanoplasty "elective" in December 2014: mild to moderate right hearing loss, infections that resolved with ear drops, and no structural damage. Doc. 89 at pp. 13, 21, ¶¶ 20, 44.  As a result, a reasonable jury could find that when Klein complained of persistent, complete hearing loss and ear pain in late January 2016 after reporting

blood coming from his right ear in early November 2015, Sood could see that his symptoms had significantly changed but nonetheless decided to take no new action despite Ritz's instructions to monitor Klein's condition and to reconsider surgery if necessary. *Id*. at pp. 15, 21, ¶¶ 24, 44; *see McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (explaining that a prison medical director could act with deliberate indifference where he "was aware of the severity of [the plaintiff's] dental problems yet refused to approve a dental visit"); *Berry*, 604 F.3d at 441 ("On the summary judgment record, a jury could reasonable conclude that [the doctor] knowingly adhered to an easier method to treat [the plaintiff's condition] that [h]e knew was not effective. [H]e had not identified an effective pain medication, nor could [h]e explain [the plaintiff's symptoms], yet [h]e rejected the obvious alternative of referring [the plaintiff] to a [specialist]."); *see also Petties*, 836 F.3d at 731 ("[W]here evidence exists that the [doctor] knew better than to make the medical decisions that [he] did, a jury should decide whether or not [he was] actually ignorant to risk of the harm that [he] caused.").

Indeed, Sood's reply brief implicitly concedes that Sood's ignoring Klein's complete right hearing loss without reinitiating the collegial review process would constitute deliberate indifference. Doc. 90 at 6 ("Plaintiff's Response also asserts … that the Plaintiff's hearing was eventually lost in his right ear and Wexford doctors chose not to conduct a collegial review. This position, however, misconstrues the undisputed record in this case.") (citation omitted). Instead, Sood submits that the factual record does not fit that pattern, arguing that: (1) Klein's right ear hearing loss was a "subjective" complaint, not an objective medical finding; (2) Sood expected Klein to regain hearing once the blood in his right ear dried; and (3) Klein could still hear well enough to function in prison. *Id*. at 7; Doc. 75 at 7; Doc. 92. Sood's arguments fail to persuade, at least at the summary judgment stage.

First, the fact that Klein's January 2016 complaint of hearing loss was "subjective" does justify summary judgment because "there is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005); *see also Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) (same). In any event, the reason Klein had no "objective" evidence is that Sood (unlike Bautista) did not authorize testing that could (and did) corroborate Klein's complaint of complete hearing loss in his right ear. Doc. 89 at pp. 7-8, ¶ 10; *see Hayes*, 546 F.3d at 523 (noting that the plaintiff had tried "to obtain a referral to a specialist, who presumably could have provided (one way or another) the kind of 'objective' evidence that [the defendant] thinks was lacking"); *Greeno*, 414 F.3d at 655 ("[T]he defendants fail to acknowledge that [the plaintiff] spent two years *trying* to obtain 'objective' evidence, but was prevented from doing so by [his doctor] and the other medical providers [who did not make a referral].").

Second, Sood testified at his deposition that he declined to consider more aggressive treatment for Klein in January 2016 because "any hearing loss would return once the small amount of blood in [Klein's right] ear dried." Doc. 90 at 7; Doc. 89 at p. 15, ¶ 25. However, "a reasonable jury" could "reject his explanation as a post hoc rationalization," *Zaya*, 836 F.3d at 806, because there is no evidence that that Klein's right ear was still bleeding in January 2016, Doc. 76-6 at 17 (Sood testifying that Klein's right ear had "no drainage" on December 3, 2015; had "no active discharge" on December 24, 2015; and was "clean" on January 21, 2016), when Klein complained of complete right hearing loss. *See Zaya*, 836 F.3d at 805 ("When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe his proffered medical explanation, summary judgment is unwarranted.");

*Petties*, 836 F.3d at 733 (characterizing a doctor's deposition testimony as "clearly a post-hoc rationalization" that was undermined by other evidence in the summary judgment record); *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (recognizing that a plaintiff could show that a doctor's "justification" for his decision "was a sham"). Similarly, although Sood emphasizes the overall volume of treatment he provided Klein, Doc. 75 at 8; Doc. 90 at 4-6, "an inmate need not show that he was literally ignored" to establish deliberate indifference, and a reasonable jury could find that Sood's prescribing pain medication for Klein's prolonged hearing loss "departs radically from accepted professional practice." *Zaya*, 836 F.3d at 805 (internal quotation marks omitted); *see also Petties*, 836 F.3d at 731 ("[R]epeatedly, we have rejected the notion that the provision of some care means the doctor provided medical treatment which meets the basic requirements of the Eighth Amendment."); *Roe*, 631 F.3d at 857-58 ("[A] successful plaintiff need not show that he was literally ignored in his demands for medical treatment, and a defendant's showing that a plaintiff received *some* treatment does not resolve the issue conclusively if the treatment was blatantly inappropriate.") (internal quotation marks omitted).

Third, Sood's other rationale for refusing to consider alternative treatment in January 2016—that Klein could still hear from his left ear even if he experienced pain, discomfort, and complete right ear hearing loss, Doc. 89 at p. 16, ¶ 26; Doc. 92—does not defeat a finding of deliberate indifference. *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("[T]o require an inmate to endure reversible blindness in one eye if he can still see out of the other … is the very definition of deliberate indifference."); *see also Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) ("[A] jury would not be irrational to conclude that the defendan[t] … knew that the plaintiff had a very unpleasant, potentially dangerous, yet readily treatable disease, yet [he] … d[id] nothing for two months because [he] w[as] indifferent to the plaintiff's condition

('you are not bleeding, you are not dead, you are talking to me, so it can't be an emergency')."). With much of the medical justification for considering Klein's right tympanoplasty to be elective having dissipated by January 2016, a reasonable jury could conclude that Sood's refusal to consider alternative treatment was by that point impermissibly driven by considerations of "administrative convenience and cost." *Roe*, 631 F.3d at 863 (holding that "the Constitution is violated" where "administrative convenience and cost … are considered to the exclusion of reasonable medical judgment about inmate health") (emphasis deleted); *see also Johnson*, 433 F.3d at 1013 (holding that a doctor could be "deliberately indifferent" where the doctor knew "that surgery was necessary and then consciously disregard[ed] that need" due to administrative considerations); *Colwell*, 763 F.3d at 1063 ("[T]he blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference.").

In sum, because a reasonable jury could find that he chose "an easier and less efficacious treatment without exercising professional judgment" when confronted with Klein's prolonged hearing loss and chronic ear infections and pain in late 2015 and early 2016, *Petties*, 836 F.3d at 730 (internal quotation marks omitted), Sood is not entitled to summary judgment. By contrast, there is no evidence in the summary judgment record that Ritz knew anything about Klein's ear conditions after he disapproved surgery in December 2014, or that he "condoned," "facilitated," or otherwise acquiesced in Sood's treatment decisions in 2015 and 2016. *Rasho*, 856 F.3d at 478 (internal quotation marks omitted). Klein therefore cannot show that Ritz acted with deliberate indifference toward Klein's serious medical issues, so Ritz is entitled to summary judgment. *See Cesal*, 851 F.3d at 723 ("[The doctor] could not have acted with the subjective intent that a deliberate indifference claim requires if he was not aware of a risk of a harm to [the plaintiff].");

*Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) (affirming summary judgment for a medical director where there was no "evidence suggesting that [he] was aware that … any … nurse was performing incompetent assessments of suicidal inmates but nevertheless acquiesced in that practice").

In the alternative, Sood asks the court to strike Klein's prayer for punitive damages. Doc. 75 at 14. That request is denied, as the deliberate indifference and punitive damage standards for § 1983 claims are one and the same. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) ("Punitive damages are recoverable in § 1983 actions where the defendant had a reckless or callous disregard to the federally protected rights of others. This is the same standard as for § 1983 liability … .") (citation omitted); *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988) ("Because this case involves the Eighth Amendment, the level of culpability required for a liability finding is the same as the punitive damage standard: both require a determination that the defendants acted with deliberate indifference or reckless disregard for the plaintiff's right[s] … .").

## II.     *Monell* Claim Against Wexford

As noted, Klein brings a *Monell* claim against Wexford. Doc. 9 at ¶¶ 24-27, 34-38. Wexford is considered a municipality under § 1983 and therefore cannot be held vicariously liable for its employees' conduct. *See Gaston v. Ghosh*, 920 F.3d 493, 494 (7th Cir. 2019) ("[P]rivate corporations, when deemed to be state actors in suits under 42 U.S.C. § 1983, must be treated the same as municipal corporations. This means they are not subject to vicarious liability."); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) ("The claim against Wexford proceeds under the theory of municipal liability announced in *Monell*, which we've held applies in § 1983 claims brought against private companies acting under color of state law.") (citation

omitted); *Shields v. IDOC*, 746 F.3d 782, 790 (7th Cir. 2014) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.") (citation and internal quotation marks omitted). To forestall summary judgment on his *Monell* claim, Klein must adduce evidence sufficient for a reasonable jury to find "that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796; *see also Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) ("The critical question under *Monell* … is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents.").

Klein's entire argument at summary judgment regarding *Monell* is that "it can be readily inferred from the evidence the foregoing doctors were employed under a strict protocol to delay, deny and obstruct medical procedures as their employer, [Wexford], would become responsible for the cost of the inmate's treatment." Doc. 85 at ¶ 51. By failing to provide legal authority or a developed response to Wexford's arguments for summary judgment, Doc. 75 at 11-14, Klein has forfeited his *Monell* claim. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Echo, Inc. v. Timberland Machs. & Irr., Inc.*, 661 F.3d 959, 967 (7th Cir. 2011) ("We agree with the

district court that the [three-sentence] argument [in the non-movant's brief opposing summary judgment] is too skeletal, and amounted to a waiver.").

Even setting aside forfeiture, the summary judgment record contains no evidence that Wexford "authorized or directed" Sood's deliberate indifference toward Klein's complete right ear hearing loss and related ear issues "at the policymaking level" through "an official policy," "a decision by a final decisionmaker," or widespread "custom." *Glisson*, 849 F.3d at 379 (internal quotation marks omitted); *see also Chatham*, 839 F.3d at 686 (affirming summary judgment for Wexford where the plaintiff "offer[ed] no evidence … that Wexford knew of [an alleged] risk … or that this 'practice' or 'custom' caused [the plaintiff's] injury"). Although Klein has adduced evidence sufficient for a jury to find Sood liable under § 1983, "isolated incidents" of deliberate indifference "do not add up to a pattern of behavior that would support an inference of a custom or policy, as [would be] required to find that Wexford as an institution/corporation was deliberately indifferent to [Klein's] medical needs." *Shields*, 746 F.3d at 796. Accordingly, Wexford is entitled to summary judgment.

### Conclusion

Defendants' summary judgment motion is granted as to Wexford and Ritz and denied as to Sood. Klein's Eighth Amendment deliberate indifference claim against Sood regarding his post-December 2014 treatment of Klein shall proceed to trial. The claims against Obaisi are dismissed under Rule 25(a)(1).

June 11, 2019

_____
United States District Judge